## The Elgin, Joliet and Eastern Railroad Company

### *v.*

### James M. Fletcher *et al.*

*Filed at Ottawa May 16, 1889.*

1. Eminent domain—*measure of damages—how far controlled by the stipulation of petitioner.* It is competent upon the trial of a condemnation proceeding, for the petitioner to bind itself, by an offer in open court, to the performance of duties, such as to inclose its right of way over the defendant's land in a shorter time than required by statute, and construct and maintain a suitable and proper underground crossing under the road-bed, etc., and thereby, and to the extent that such performance will prevent damages that would otherwise occur, abridge the land owner's claim for damages.

2. Where the petitioner, on the trial, offers and agrees to fence its right of way over defendant's land, and make the necessary, suitable and proper farm crossings and cattle-guards on or before a day named, which is a less period than the statute fixes, all the damages recoverable because of the road not being fenced, or for want of crossings, etc., will be those sustained before the day named.

3. Same—*judgment of condemnation subject to performance of stipulation.* Where the petitioner, on the trial, in open court, agrees to perform duties not required by the statute, or in less time than the law requires, for the purpose of lessening the damages, the judgment should vest the rights obtained by the condemnation, subject to the performance of such duties, so as to insure their performance.

4. Same—*offer of petitioner—how far binding as a contract.* If an offer of the petitioner, in open court, on the trial, to make fences, crossings, etc., in a shorter period than that required by statute, is taken in consideration in the assessment of damages, the liability of the petitioner in that regard will thereafter become one by virtue of express

128 619
137 323
128 619
64a 662

128 619
165 304
165 339
167 621

128 619
171 441
128 619
79a 58

128 619
192 ⁶376

128 619
194 ³ 95
101a ⁶668

128 619
203 ³178

128 619
e110a¹327

128 619
113a ⁶245

contract, and if the contract is not performed, an action will lie for its breach.

5. Same—*binding character of offer of petitioner as a question of law or fact.* Whether an offer by a railway company, on the assessment of damages for a right of way, to fence its road and make crossings by a day named, is binding on the company, is not a question of fact for the jury, but is purely a question of law, and it is error to submit such question to the jury as one of fact.

6. Practice—*improper remarks of counsel to the jury.* A court hearing counsel, under pretense of arguing a case, making statements of matters to the jury not in evidence, nor pertinent as illustrative of matters in evidence, should promptly stop him, explain to the jury the impropriety of his language, and take such measures as are appropriate to prevent a repetition of such misconduct, and for a failure of duty in this respect manifestly affecting the result, the judgment should be reversed.

7. In such case, the counsel whose client is unfavorably affected by such statements, should call the attention of the court to them at the time, lest the court might not otherwise have noticed the same.

Writ of Error to the County Court of Du Page county; the Hon. Charles A. Bishop, Judge, presiding.

Mr. Noah E. Gary, for the plaintiff in error:

The court erred in refusing to give this instruction, asked by the appellant:

"The jury are instructed, that the petitioner railroad company is bound by the statute, within six months after any of its line is open for use, to erect and thereafter maintain fences on both sides of so much of its road as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, excepting at the crossings of public roads and highways, with gates or bars at the farm crossings of such railroads; and also to construct such farm crossings wherever they are necessary, for the use of the proprietors of the lands adjoining such railroad; and also to construct and maintain at all highway or public road crossings now or hereafter existing, cattle-guards, suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad; and the jury have no right in

this case, in estimating the damages, to take into consideration any loss, inconvenience or damage resulting from the failure of the petitioner to maintain such fences, farm crossings or cattle-guards at highway crossings, as above stated."

This instruction follows the provisions of the statute in every substantial particular, and no one was given upon the subject therein embraced.

It is insisted the first instruction given by the court at the request of respondents is erroneous. By it the jury were instructed that the petitioner was not bound to fence any portion of its railroad until six months after such part of its line was open for use, and that the jury might consider whatever damages they might believe, from the evidence, would be caused by reason of leaving open the tracks for six months, unless, the court added, the petitioner had stipulated, in open court, that it would, May 1, 1888, construct and thereafter maintain suitable fences. The petitioner had, in open court, stipulated that it would, on or before May 1, 1888, construct and thereafter maintain suitable and statutory fences, and would construct and maintain a suitable and proper underground crossing, twelve feet square. This stipulation was binding. *Railroad Co.* v. *Railway Co.* 105 Ill. 388; *Hayes* v. *Railroad Co.* 54 id. 373.

As to the alleged improper statements and remarks of counsel, see *Railroad Co.* v. *Johnson*, 116 Ill. 210; *Railroad Co.* v. *Bragonier*, 13 Bradw. 467; *Jackson* v. *People*, 18 id. 519; *Chase* v. *City*, 20 id. 279.

Messrs. BOTSFORD & WAYNE, for the defendants in error:

The refused instruction of which complaint is made, is in conflict with *Railroad Co.* v. *Kirby*, 104 Ill. 345, and *Railroad Co.* v. *Rixman*, 121 id. 214.

The offer of appellant's counsel was of no binding effect on the railway company. It purports to have been made on the authority of the engineer of the road, but nothing is shown

that authorized the engineer to thus bind the company. He, it seems, was present, and if he had with him any such authority, counsel, if sincere, would have shown the fact.

The cases referred to by counsel in support of his position show a different state of facts. In the case of *Hayes* v. *Railroad Co.* 54 Ill. 373, there was a stipulation written out, signed by the president, secretary and treasurer of the company, and filed in the case. In the case of *Railroad Co.* v. *Railway Co.* 105 Ill. 388, there was a stipulation, signed by the company, filed in the case, and offered in evidence. The court sustains these stipulations, because "they were executed in a manner to be obligatory on petitioner." But in the case at bar there was no binding obligation of the company. It was so understood, as the case went on with this element of damages still before the jury.

Admit that in the opening speech of counsel for the defense improper remarks were made, yet the court, so soon as his attention was called to the matter, rebuked counsel. It is not sufficient for counsel, when improper remarks are being addressed to a jury, to silently except, as the court may be engaged in preparing or reviewing instructions, but counsel should, by some positive act, call the attention of the court to the fact. *Wilson* v. *People*, 94 Ill. 299; *Mayes* v. *People*, 106 id. 306; *Bulliner* v. *People*, 95 id. 394.

But the rule is almost universal, in both criminal and civil cases, that the appellate court will not reverse a case for improper remarks of counsel made in argument to the jury, unless made in violation of some statutory provision, or neglect of the trial court, when appealed to, to correct the abuse. And we believe the rule further to be, without exception, that a reversal will not be held in any case where the verdict of the jury is fully sustained by the evidence. *Garrity* v. *People*, 107 Ill. 163; *Baysinger* v. *People*, 115 id. 419; *Railroad Co.* v. *Johnson*, 116 id. 206; *Henry* v. *Railroad Co.* 121 id. 264; *Felix* v. *Scharnweber*, 119 id. 445; *Spies* v. *People*, 122 id. 1.

Mr. Justice Scholfield delivered the opinion of the Court:

This is a proceeding under the Eminent Domain act, to condemn right of way for appellant's road, and to assess damages occasioned to land not taken. Appellees own a farm of about 314 acres, through which the line of appellant's road runs, taking for right of way about $9\frac{21}{100}$ acres, and dividing the farm so that there are about 184 acres on the east side of the road, and 120 acres on its west side.

There is a serious conflict in the evidence on the question of damages to the land not taken. The jury, in their verdict, assessed the value of the land taken, and the damages to land not taken, at the aggregate sum of $3700, and the court gave judgment upon this verdict.

Wallace F. McChesney, upon his examination as a witness, testified that he thought the land taken was worth $70 per acre, and that the damages to the land not taken were $1000, and he then said: "I have added $500, because the right of way may be unfenced for six months—that is included." Thereupon the attorney for appellant addressed the court as follows: "The chief engineer of the petitioner company has just arrived, and I wish to state in open court, by authority of the engineer, and in his presence, and as counsel for the petitioner, that it hereby agrees it will, on or before May 1, 1888, enclose its right of way over respondents' land in question, with suitable and statutory fences, and thereafter maintain the same, and that it will, in building its road, construct and thereafter maintain a suitable and proper underground crossing, at least twelve feet square, on respondents' land in question, and under petitioner's road-bed."

The court, at the instance of appellant, instructed the jury, among other things, as follows:

"The jury are instructed, that in this case the petitioner railroad company has, in open court, stipulated that it will, on or before the first day of May, A. D. 1888, construct, and

thereafter maintain, suitable fences along its right of way over the property of the respondents, and that it will construct and permanently maintain an under-crossing, twelve feet square, and that the jury, in considering of their verdict, have the right to assume that the proposal and agreement of said petitioner will be carried out, and the jury, in fixing their verdict, should not take into account any failure of the petitioner to keep and observe its agreement with reference to such fences and under-crossing."

One of the instructions given at the instance of appellees is as follows:

"The jury are instructed, that the railroad company is not bound by law to fence any portion of its railroad until six months after such part of its line is open for use, and in determining, in this case, whether the defendants sustained damages, and in fixing the amount thereof, the jury may consider whatever damages they may believe, from the evidence, will be caused to the defendant by reason of leaving the railroad tracks open and without fences for the said period of six months after it is open for use, unless the jury further believe the petitioner railroad company has, in open court, stipulated that it will, on or before the first day of May, A. D. 1888, construct, and thereafter maintain, suitable fences along its right of way on the property of respondents."

Appellant asked, but the court refused to give, an instruction reciting the statutory duty of the appellant to make fences within six months after the time that its line is open for use, and to construct farm crossings, cattle-guards, etc., and concluding thus: "And the jury have no right, in this case, in estimating the damages, to take into consideration any loss, inconvenience or damage resulting from the failure of the petitioner to maintain such fences, farm crossings or cattle-guards at highway crossings, as above stated."

It is recited in the judgment of condemnation, among other things, as follows: "It is therefore ordered and adjudged by

the court, that judgment be and the same is hereby entered herein upon the said verdict, and that the said petitioner, upon payment to the county treasurer of the sum of $3700 for the use of James M. Fletcher and Mark W. Fletcher, and to be paid to them on demand, taking their receipts therefor, respondents herein may enter upon and have that portion of the premises described in the petition filed herein, to-wit:" (Here follows a description of the land taken.) "And subject to the obligation of the petitioner to fence the same, on or before May 1, 1888, and to establish an underground crossing and grade crossing, as stipulated upon the trial."

Before the giving of any evidence, the jury viewed the premises, and thus had an opportunity to acquire personal knowledge of the manner in which the farm is affected by the road.

No discussion can be needed to show that if the instruction quoted, which was given at the instance of appellant, was properly given, the instruction quoted, which was given at the instance of appellees, was improperly given. If the offer to make fences, crossings, etc., was binding on appellant, it superseded the statutory duty to make fences, etc., for it provided they should be made within a shorter period than that provided by statute. The liability of appellant, in that regard, thereafter became one by virtue of express contract, and if the contract should not be performed, suit would lie for its non-performance, at any time after the first of May, 1888; and hence, all the damages that could be included in the judgment here, because of the road not being fenced and for want of crossings, etc., are those to be sustained before the first of May, 1888. And so, on the other hand, if the offer to make fences, crossings, etc., was not binding, the statutory liability would apply, and damages should be assessed for not fencing, etc., until the expiration of six months after the road is open for use; and in that view, the jury should have been told, as asked by appellant, that no damages should be included in this judgment for not fencing, etc., after that period. Whether the

offer to fence, etc., is binding on appellant, is not a question of fact for the jury. It is purely a question of law, as the court treated it in the instruction quoted, given at the instance of appellant; and it was therefore error to afterwards submit it, as was done by the instruction quoted, given on behalf of appellee, as a question of fact to the jury.

We think it is competent, upon the trial of a condemnation case, for the party seeking condemnation to bind itself, by an offer in open court, to the performance of duties like those here offered to be performed, and to thereby, and to the extent that such performance will prevent damages that would otherwise occur, abridge the claim by the land owner for damages. (*Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388; *Hayes* v. *Ottawa, Oswego and Fox River Valley Railroad Co.* 54 id. 373.) The judgment in such case should vest the rights obtained by the condemnation, subject to the performance of such duties, so as to insure it, and that was sufficiently done here.

It may be, as contended by counsel for appellees, that the difference between the first of May, 1888, and the expiration of six months from opening the road, is not very great. Still, there is a difference in time in favor of the undertaking of the company; and it is impossible to say how much greater the damages assessed may have been upon the assumption that fences, etc., were not necessarily to be built until after the expiration of six months from the opening of the road, instead of by the first of May, 1888. The sum assessed is quite large, and it can not be said that we can see that this error did not affect the amount. *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mitchell*, 47 Ill. 165.

Other objections are urged because of the mode of argument pursued, upon the trial, by the attorneys for appellees, but as it is not probable that this objectionable conduct will be repeated upon the next trial, we deem it unnecessary to notice and comment upon it in detail.

A court hearing counsel, under pretense of arguing a case, making statements of matters to the jury not in evidence nor pertinent as illustrative of matters in evidence, should promptly stop the counsel, explain to the jury the impropriety of his language, and take such measures as shall be appropriate to prevent a repetition of such misconduct; and for a failure of duty in that respect, manifestly affecting the result, the judgment should be reversed. But the counsel whose client is unfavorably affected by such statements should call the attention of the court to them at the time, for it might be that, being preoccupied with other matters, they would otherwise escape his attention.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*